This is 4090307 N.A. v. Petition of First Financial Bank N.A. v. J. Scholl Jones N.A. v. Gil B. Jones N.A. v. Eric Jones We have for the appellant John Thomas Halloran and Barbara Delanois. How do you pronounce? Delanois. And Stephen Amjad. Good morning. Good morning. Have you divided your time? Yes, Your Honor. I'm Barbara Delanois. As you know, I represent the petitioner in this case, First Financial Bank. I will be taking four minutes. Mr. Halloran will be taking the rest of the minutes, and he does intend to use five minutes for rebuttal. All right. Thank you. May it please the Court, Mr. Amjad, Mr. Halloran. The parties in this case are First Financial Bank, who is the trustee of a testamentary trust, which involves a life beneficiary, Jerry Jones, and two remainder beneficiaries, Gil Jones and Eric Jones. The issue that I am concerned with today is a very small but large issue, and that is whether or not the circuit court abused its discretion by refusing to appoint a guardian ad litem to represent the interests of Eric and Gil Jones, the remainder beneficiaries. Over the period of time that this case has been pending, it initially started as a, well, it is a petition for instruction from the court. The trustee is seeking direction from the court with respect to administration of the trust assets. At some point, we ended up with a motion for summary judgment filed by the primary beneficiary, the life beneficiary, and that would be Jerry Jones. And that order ended up effectively finding that Eric and Gil Jones are members of a contingent remainderman class and that they have no standing to participate in the proceedings. Upon that order, the bank was concerned that, well, if there are any orders to be entered that would be enforceable against the trust or the trustee, that it would not be binding on the contingent beneficiaries if they are not represented somehow in this proceeding. How old are the boys? The boys are all adults. They live independently. Jerry Jones is approximately 70-some years old. So, at that point in time, we filed asking the court for the appointment of guardian ad litem to represent the class of contingent remainderman so that any orders that come from the court would be binding on the class of contingent remainderman. The circuit court denied that motion for the appointment of a guardian ad litem. Now, this issue only really becomes an issue if the court finds that the remainderman do not have standing. The court can still find that they are a class of contingent remainderman, but whether or not they have standing is the real issue. The most recent issue pending after the finding of no standing is the motion by Jerry to approve a settlement agreement that we had knocked out prior to filing the motion for summary judgment. And that settlement agreement provided various different payments to Jerry and the contingent beneficiaries. The contingent beneficiaries backed out of the settlement agreement. Jerry turned around and filed a motion to approve the settlement agreement. We joined with Jerry to approve that settlement agreement. Then, after the court found that the contingent beneficiaries did not have any standing, the bank changed its mind and decided under the statute that provides for virtual representation that if we do not have all primary beneficiaries in that agreement, we cannot make it an enforceable agreement. Thus, leaving the bank open to a potential for breach of fiduciary duty later on once the contingent beneficiaries essentially become the beneficiaries once their father dies. Thank you. May it please the court, counsel. My name is John Thomas Howard and I'm from Acton and Snyder in Danville. And I represent the appellants herein, and that's specifically Gil Jones and Eric Jones. Gil and Eric are the grandchildren of Phoebe Jones. Why do we need a guardian ad litem if you represent them? Well, as of today, I don't represent them in the action before the circuit court because the circuit court has found that we have no standing to participate in that proceeding. So we are effectively closed out. We're not asking for a guardian ad litem. We're not before this court today asking for a guardian ad litem. Though, if the court today does find that we are, in fact, contingent remaindermen and as such do lack standing, we would support the bank's request for a guardian ad litem. The circuit court erred in determining that my clients were contingent remaindermen and lacked standing to participate in this action. The court applied a so-called divide-and-pay rule and held that Gil and Eric were contingent remaindermen because the court found that they were members of an undetermined class and because the court found a survivorship requirement in the trust. We do not believe that there is either an undetermined class defined in the trust, and we do not believe that there is a survivorship requirement in the trust. We believe that the circuit court could err on those two counts. It's important to note that we're on appeal today from cross motions for summary judgment. As such, the court can review those findings to know about and should reverse the trial court's rulings and remand with directions to enter an order that Gil B. Jones and Eric S. Jones are, in fact, vested remaindermen and that they do, in fact, have standing to participate in this action. Are allegations of wrongdoing required? In order for vested remaindermen to have standing, Your Honor? No, in order for you to make a claim,  Yes, Your Honor. In order to intervene as plaintiffs, my clients would have to allege wrongdoing. That's not how this case started. This case started as a petition for direction with the bank. The bank sought to include all primary beneficiaries in that petition for directions, and we were brought in in that way. If we were to assert before the court our claim as to our right in the remainder, if we were to come forward on our own to assert such a claim, I believe that we would have to indicate some sort of wrongdoing or some sort of waste or some sort of breach of fiduciary duty in order to bring a case affirmatively as a plaintiff. But I think that participating as a respondent in an action, there is no requirement of wrongdoing. We simply have standing because there is nobody else to protect our interests. The bank sought to encourage the participation of all interested parties in this case. And whether this court finds that we are vested or contingent, the boys are interested parties. I think that the fact that this is a petition for direction is significant in that way. And I think that it's also significant that this petition was filed on October 11, 2007. At that time, the boys, my clients, Eric and Gil, were brought into the case by the bank and participated in this case as litigants until Jerry, the father, filed his motion for summary judgment on January 21, 2009. So we were in there for almost a year and a half before that happened. I think that one of the errors that the circuit court made was in finding that we were members of a contingent class, that we were members of an undetermined class. Now, this case is a very complicated procedural and factual history. But it comes down, for the purposes of this court today, to two dozen words. And those two dozen words are found in the testamentary trust of Phoebe Jones. I'm going to read those words for you right now. Upon termination of this trust, the remaining assets of the trust shall be paid to the descendants of J. Shull Jones in equal shares. It's critical in the language of that granting sentence that Eric and Gil are descendants. Many of the cases that were cited at summary judgment were cited talking about contingent remainder men who were heirs as opposed to descendants. There's a critical difference in Illinois law, as there is in practice, between descendants and heirs. Descendants are those who follow in lineage, those who are born from one person. As soon as the trust came into being, those people who were descendants at that time had an interest in this trust. Because those people at that time were in being, they were ascertainable, and they were ready to take immediate possession following the termination of the trust. So upon the date of the creation of the trust, the descendants were an ascertainable group that were ready to take immediate possession upon termination of the trust. That would have been different if they were heirs. If they were heirs, the heirs could not have been determined until, in this case, under the language of this trust. What's at issue in this case? What are Gil and Eric seeking to do? Gil and Eric are seeking to protect their grandmother's intention in the formation of the trust. So they're just seeking to be at the table when all this stuff is talked about? We're seeking to participate in that way. We're seeking to be able to object to settlement agreements that we do not feel are... Do they have veto power over settlement agreements? I think that, yes, Your Honor, they should have veto power over settlement agreements. They're required participants in those agreements. But that's not at issue yet, is it? They just want to be there when it's talked about? In some ways, it is at issue already. In the ways that it's at issue already is that there already have been settlement agreement talks. There was a settlement agreement that the bank and Mr. Jones, the father, entered into, and we objected to that settlement agreement. And it was following that, our objection to that settlement agreement, that a motion was filed seeking to have us found to be a contingent of remainder men lacking to stand. The other important point in that granting language is that the gifts, the gift to Eric and Gil, my clients, those gifts are unqualified and absolute. There's no question about when the gift is or what the gift is, or there are no requirements that are placed onto my clients before they're able to take that gift. And that's classically vested language. There has been suggestion that there is a requirement of survivorship in this case. There is no requirement of survivorship here. The termination of this trust is the moment that J. Shull Jones, the father, dies. Upon that time, the trust terminates. When the trust terminates, the remaining assets are paid to the descendants of J. Shull Jones. Now, there is, in that granting language, a second sentence. And the second sentence has to deal with lapsed gifts. So if any of the descendants of J. Shull Jones die, there is a provision that steps in that deals with that lapse. It's my belief that the circuit court erroneously read that provision to impute a requirement of survivorship. However, there is no requirement of survivorship. If there was an intended contingency in this granting language, the intended contingency would have to be in the language of grant rather than a separate clause dedicated to the possibility of lapse. It's also the law in Illinois that the possible death of a vested remainder during the pendency of a life estate does not render that vested remainder contingent. And in this case, again, we're looking at very clear granting language, which establishes a grant to people who are in being ascertainable, who are ready to take immediate possession following the termination of preceding life estate. The court applied what is called the divide-and-pay-over rule. Now, the divide-and-pay-over rule is a rule of trust construction. I'm sorry, before you go into that. Yes, thank you. Mr. Amjad argues in his brief that until Jerry's, as long as Jerry's alive, it's uncertain whose descendants will be at the time of his death. Okay, we need to decide what point we're looking at the slice of time. Mr. Amjad is right. As of today's date, we don't know who Mr. Jones's descendants will be at the time of his death. That does not create a contingency because we know who the descendants are right now. So today, November 19th at 9.17 in the morning, we can tell you who every single descendant of Jerry Jones is. If Mr. Jones were to die five seconds from now, we would know whose descendants are. We wouldn't know who his heirs were until sometime after he died. So every slice of time, tomorrow at 9.20… His heirs are the people he designates to receive his legacy? His heirs are either the people that he designates to receive his legacy or those who follow through the intestacy statute of Illinois. There requires an operation following Mr. Jones's death to determine who his heirs are. But if he has a will, for instance, it wouldn't matter what the intestacy statute says concerning who his heirs are? Honestly, Your Honor, I can't answer that question because that's outside really the scope of this trust. The trust doesn't speak to heirs. Wasn't that a matter of law? Isn't heirs a term of art meaning who inherits? In heirs, in this context, Your Honor, heirs is a specific term of art meaning those people who inherit following death. Yes. Yes. But again, I can't speak to the specific mechanics of how that would work because really that's outside the scope of the language that's in this trust. But as we sit here today and as we would sit here tomorrow at 9 a.m. or next week at 9 a.m. or next month at 9 a.m., at any given point in time, we would be able to speak specifically about who Mr. Jones's descendants are at that time. And for that reason, they are in being. They are ascertainable. And that's what's really required for there to be a vested remainder. Now, the Court applied the divide-and-pay rule. The divide-and-pay rule is a rule of trust construction that assists in determining whether or not gifts are contingent or vested. The rule operates when there is a testamentary disposition that requires some time in between when that disposition comes into being and when the gift is made. Effectively, if there is a term of years between when the will comes into operation and when the gift is made, that's the sort of time that the divide-and-pay rule is applicable. In no Illinois case is the divide-and-pay rule applied to facts that are similar to the facts in the case of the bar. In fact, what we have here is we have a gift that is preceded by a life estate. So the life estate, as soon as the life estate is over, then my clients, the remaindermen, step in and pay. The gift is simply reserved, not for any purpose other than letting in the intermediate life estate. Is this an unusual form of trust? No, Your Honor, I don't think it is. That's why I've been surprised. I mean, I think that this is fairly straightforward language. And I think that you would see it in many trusts that are formed across Illinois. And that's one of the reasons why I'm curious about if this language does in fact invoke the divide-and-pay rule, why at least one of the divide-and-pay cases doesn't speak specifically to the language that's involved in this trust. And I think that Your Honor makes an excellent point. And although that's not really the question that's before you, it is certainly a consideration that needs to be before you, which is that if this specific granting language does not create a vested remainder in an afterborn beneficiary, what is it that an estate planning practitioner needs to do to create such a remainder? I believe that under Mr. Jones's version of this case, the creation of such a remainder would be almost impossible. Under the plain language of the trust, Gil and Eric are vested remainder. They are vested because they are in being, they are immediately ascertainable, and they are ready to take immediate possession following termination of the preceding life estate. The divide-and-pay rule simply does not apply in this case. For those reasons, along with reasons previously articulated, this Court should reverse the finding of the trial court and remand with directions to enter a finding that Gil B. Jones and Eric S. Jones are in fact vested remainder and do in fact have standing to participate in this action. Thank you, Your Honors. Thank you, Counsel. Mr. Amjad. Good morning. May it please the Court and Counsel. My name is Steve Amjad. I am here on behalf of J. Shull Jones, and he goes by Jerry, so that's what I'm going to call him throughout these proceedings. Jerry is about a 72-year-old man, and the case is about a trust that, in our opinion, wasn't written correctly. It was written as a special needs trust, and I think that's what has created the confusion that has led to this litigation. I think you asked if it was pretty standard language. It is standard language, but it's language that would have been used in a situation where someone needed a special needs trust, and that is not the case here. So we've gotten into a fight about what this language really means. Jerry is not disabled. He is not disabled, no. So as I sat in that chair, I heard Mr. Halloran say that it's the boy's interest to do what Grandma wanted, fulfill Grandma's intent. And what I want to start by pointing out to this Court is what the specific language in her trust says on its face. It says in several instances that this is for the benefit of my son, J. Shull Jones. This is for the benefit of Jerry. It says it four times in Article 5. It says it actually more than four times. It says it six times in Article 5 in three different paragraphs. This trust is for the benefit of my son, J. Shull Jones. The fact that the remainder of the trust, whether it's contingent or vested, goes to Jerry's descendants is almost an afterthought in this trust. Her intent was not to provide for those boys. Her intent was to take care of Jerry's needs during his lifetime. Isn't the issue before this Court whether they are contingent or vested remainders? Yes, but at the heart of any case is the intent of the testator, Your Honor. How about the language? When we're construing a will, isn't the heart of the case the language? The heart of the case is the language, and the heart of the case is determining how the language can fulfill the testator's intent. I'm not sure I agree with that, counsel. It seems to me like construing statutes and construing written documents, we first ought to look at what the language says, and perhaps if there's an ambiguity or an uncertainty, look to see how to resolve it by using aids of construction. But if there's no ambiguity, why are we worrying about what Grandma wanted if her language provides that these guys are vested remaindermen? First of all, I don't think her language does provide the vested remaindermen. Secondly, it's been Jerry's position since this case began that this is a trust construction case. The other side doesn't want it to be that, but we think the language is ambiguous. We think it is a trust construction case. I begin my argument by telling you her intent clearly is to benefit Jerry, because that's what her intent is. In Harris Trust, a case we cite in our brief, the court says that paramount to the analysis of the language of the trust is the court's attempt to determine the testator's intent at the time the will was created. So maybe I misspoke earlier, but I'm basing the fact that we need to determine her intent on the Harris Trust case. That's the goal of any construction. That's the goal of the examination of the language, as Your Honor so aptly pointed out. That's the issue here. This is a trust construction case. As I understand this, the decedent had three sons. Yes. And the estate was divided into thirds. Yes. Two of the sons got their gift outright. Yes. But a trust was established for Jerry, but you say he's not in need of a special needs trust. No. I'm going to read from the trust itself. The express purpose of the trust is to provide for Jerry's extra and supplemental needs over and above the benefits Jerry otherwise receives as a result of his handicap or disability from any local, state, or federal government or private agencies, so on and so forth. That sounds to me like a special needs trust. It is a special needs trust, but Jerry doesn't have special needs. That's why it's created this ambiguity. If he was disabled, if he had special needs, well, that's part of the reason an ambiguity is created. But if he had special needs, I don't think it would be as big an issue. Does he receive disability or anything? Well, it says he's got a handicap or disability. He doesn't, though. That's why the trust is incorrect. Did his mother think he had a disability? Your Honor, there are facts that I'm not sure are in the record that I could disclose to the court, but I'm a little uncomfortable with that. I'm not going to push you to do so. Okay. Suffice it to say, the special needs language is unnecessary. The trustee came to the court because Jerry hired our firm to tell them what medical care maintenance and education was. The bank disagreed, the trustee disagreed, filed a lawsuit for direction, and we are in the process of working out that lawsuit when this dispute with the contingent remainderman developed. But we're still taking the position that the medical care maintenance and education that the bank was saying is due is incorrect. It should be more money. That's what the fight is about. If this court concludes that the boys are busted remaindermen, this case over, do you lose at this point? No. If they conclude that they're contingent remaindermen, they get back into the suit. The suit goes forward to trial. We present experts about what Jerry's medical care maintenance and education needs are. We present legal briefs on what should make up maintenance. But for purposes of are they at the table and do they have a right to participate, you would lose that portion of this case when the trial court said no they aren't and they don't. I think that is correct. If you reversed and remanded and said they were vested, that's correct. So the focus is are they vested or contingent remaindermen for our purposes? At this point, and then also whether or not a GAL should have been appointed. Is that an issue at this point? At this point, yes, because the bank has appealed that specific issue, whether or not a GAL should have been appointed. So we're here in front of you on two issues. Who pays the GAL? The trust pays the GAL and Mr. Lienus' legal fees. And if this court determines that it's a trust construction suit, which seems obvious to me since we're applying construction language, then we would go back and ask for our legal fees that are attributed to the construction to be paid also. And probably Mr. Allerin would ask for the same. So as we go down this road of what her intent was, we begin with the timing of the creation of the trust. What was the timing? And I think that's a point that the boys miss and have missed throughout these proceedings. If you look at the trust creation, it's created at the time of Phoebe's death, because that's when it's funded. And the trust contains language, termination language in it, that says this trust shall terminate upon the death of my son, Jayshall Jones, or upon my death if he shall pre-decease me. So the trust itself was contingent upon Jerry surviving Phoebe. If Jerry didn't survive Phoebe, the trust never comes into place. Jerry's boys never get a dime. The money goes to her other kids. Now, if we look at the language that Mr. Allerin is saying creates a vested remainder, even in that language, it strikes me that the boys have to survive, because the descendants of Jerry can't be determined when Phoebe was alive. It can't happen. So that makes it an undetermined class. They haven't disputed that. Dawson v. Ucas, I think, is the case that the trial court relied on to say, they're an undetermined class. Nobody in this case has disputed that. So since we can't determine what the trust was because Jerry survived Phoebe, the descendants are undetermined at the time of Phoebe's death, when the trust was created, they're an undetermined class. That issue's out of the way. Mr. Amjab, I just want to go back to a question I asked you earlier to make sure I understand this case procedurally. The trial court denied the trustee's motion for appointment of GAL on April 14, 2009, and according to the conclusion of Ms. Delanoy's brief, she's arguing that in the event we affirm the trial court's March 24 order finding that the boys are contingent remain-to-men, have no standing to participate, then we should reverse the trial court's order and direct the circuit court to appoint a GAL. It goes back to my earlier question. If we reverse that order and find that they are contingent or vested remain-to-men, then we don't have to do anything with regard to the GAL, do we? No, you would not because they would have to be able to represent their interests. So the only issue, the primary issue, not the only issue, this is a contingent one, is are they vested or contingent remain-to-men? Yes, that is correct. Okay, go ahead. So then we look at that language, and I think the hypothetical that I outlined in my brief is pretty on point in this case. It makes sense. If Jerry's kids, if Gil and Eric tried to will this remainder at this point, it would be invalid. They can't do it because if they got hit by a bus five minutes afterwards and Jerry was still alive, they wouldn't have anything to give away. It can't be vested until Jerry dies. It's an undetermined class until Jerry dies. Indeed, if Jerry happened to have another child, we would be adding to the descendant pool. If he adopted a child, that maybe arguably we wouldn't, but there are so many different things that could happen. Gil and Eric themselves could have more kids and then die. Then the pool changes. There are limitless possibilities as to how this group of descendants could change. When we look at this language and try to decide whether or not they're contingent remain-to-men, the law in Illinois under Heitzig, the Supreme Court case that we cite, says that if there's uncertainty to the person or uncertainty as to the gift, then it's a contingent remainder. Uncertainty as to the person, uncertainty as to the gift. We've gone over uncertainty as to the person. The descendants are uncertain at this point. Indeed, in this case, we also see that the trustee is given the power to completely exhaust all of the assets. There is no stipulation that the trustee can't exhaust principal. There's no stipulation that Jerry is only limited to interest or income. The trustee, if they felt that they needed to care for Jerry's maintenance, medical care, and education, could exhaust all of the funds. Does anybody argue with that proposition? No. No. So we're at a point now where not only is there uncertainty as to the class because Jerry's still alive, there's also uncertainty as to the gift itself because the trustee could exhaust the entire gift. We meet both of the prongs under Heitzig before we even get to the divide-and-pay rule. So now we look at the divide-and-pay rule, and in that situation, and the court relied on that correctly. The court looked at the language. What does the language say? We've cited the two Supreme Court cases. There are no exceptions to the divide-and-pay rule in Illinois. It's a rule of construction to help this court determine whether a remainderment is vested or a remainderment is contingent. It's something that the trial court used and that you can use. Are there any cases that fit these facts? Yes. Under the divide-and-pay rule? Yes. The Harris case is very similar. The Harris case is a Supreme Court case cited in our brief. The language is similar in that case. In that case, a trust, actually two trusts, were created for the benefit of the decedent's wife during her life. The difference between that case and this case is in that case, the trustee could not exhaust the gift. The trustee was limited there. In this case, the trustee wields even more power because it can exhaust the gift. Now, the language was similar because the language instructed the trustee to divide out and pay, and in that case, it's interesting when we look at it closely because it says that the specific words used, there's no magic language. There's no magic term that has to be used. And Hall also, I'm sorry. Yeah, Harris says that. I apologize for that. It says the balance of the trust fund shall be divided among the heirs of the party of the first instance, share and share alike. That's the trust language in the Harris case. There was a second trust that said the trust funds shall be distributed equally among my heirs. So it didn't specifically say the trustee shall divide and pay out. And the Harris court said it doesn't need to say that. All it needs to do is to generally direct the trustee to split up the money and pay it out. That's exactly what we have here in this case. And Hall reinforced that idea. Hall says that the words importing the gift are found in the direction to divide, distribute, pay, or to sell the property and distribute or pay over the proceeds in the future. The gift will not vest until the time arrives to pay, divide, or distribute. The gift will not vest. It is clear that under the application of the divide and pay rule, they're contingent remainder. If there's any confusion as to the language, when we try to just apply the definition itself of what a contingent remainder is according to Harris, we go to the divide and pay rule. The divide and pay rule also supports Jerry's position. In this case, these two boys are contingent remainder. The trial court reached the correct decision. This court, in 1993, in the Goodwine case, reiterated the distinction between a vest and a contingent remainder as follows. Contingent remainder is either to a person not yet ascertained. It doesn't apply here. Or not in being. It doesn't apply here. Or depends upon an event which may never happen. I don't think that applies either. Well, vested remainder is the one ready to come into possession upon the termination of the prior estate. That seems to apply. It does, Your Honor. So why aren't these vested remainder men under that definition? Well, the Heitzig definition is from the Supreme Court. The Heitzig definition from 1932 says the right of present enjoyment or a fixed right to future enjoyment in a determinate person after the particular estate terminates. So this court was wrong in its 1993 decision I quoted, quoting the 1978 decision? Well, I would prefer that the court rely on Heitzig. I don't know the facts and circumstances of that case. It's possible that the facts were different and perhaps the counsel at the time didn't draw the court's attention to Heitzig. I'm not certain. I think Heitzig is still good law. That's why we cite it in our brief. Heitzig says if there's uncertainty as to the person who is to receive or the gift itself, it's a contingent remainder. Well, under that explanation, give me an example of who would be vested remainder men. It would be very easy for Phoebe to have made them vested. She could have said, I give in bequeath to Gil and Eric Jones this amount of money. Short of naming them. If you name them, then that's an entirely different issue. Were they named in Heitzig? I don't know if they were named in Heitzig. Short of naming the vested remainder men, what else could be done to render them vested remainder men according to your theory? Phoebe could have said the trustee shall not dissipate the principal of the trust under a certain amount because it's my intent for that to pass to Jerry's heirs. That would have made it crystal clear that she wanted a portion of the money to be left over for Jerry's heirs. It could have been even simpler than that. It could have said the trustee is only allowed to spend income and interest and cannot use principal. That would have indicated an intent for it to pass on to the heirs. It would have vested the principals in the heirs and not in Jerry. So the treatment of the corpus of the trust is what changes a contingent remainder men into a vested one? Well, I would say under Heitzig, it's two prongs. It's can we determine who the people are that get it? And is the gift certain? So to agree with you, we're going to have to overrule the decision I just quoted? Well, I think you would follow Heitzig and say – That doesn't answer my question. Again, Your Honor, I'm not familiar with that case, and I apologize. I wish I had more of a familiarity to be able to tell you whether or not you'd have to specifically overrule that case. What year is Heitzig? It's 1932. Are you familiar with Dyson v. Wolfe, another Supreme Court case from the 1950s? I have that in mind. I'm going to quote. Whalen quotes it. It's one of our cases, or one of the appellate court cases. Whenever the person who is to succeed to the estate in remainder is in being and is ascertained, and the event which by express limitation will terminate the preceding estate is certain to happen, the remainder is vested. Why doesn't that apply here? Well, the difference there is that that doesn't address the issue of the uncertainty of the gift. It addresses the certainty of the person, but not the uncertainty of the gift. In this case, it can't be vested because we can dissipate the gift. If it's vested, you wouldn't – Well, that goes back to my earlier question about the treatment of the corpus of the trust. Yes. So that defeats the notion of whether someone is vested or contingent? Well, I think it's – Heitzig makes it two prongs. If you fail under one of those prongs, then it's vested. If there is certainty as to the person but uncertainty as to the gift, it's vested. Am I saying that right? If there's certainty as to the person but uncertainty as to the gift, if you don't satisfy the two prongs, I think it's vested. In this case, we satisfy both. It's contingent. I would ask, in closing, simply that you support the trial court in not having standing. I think we have a well-reasoned argument in our brief. I don't have the time to go into that issue. I think also that the abuse of discretion standard is a very high standard. In this case, the trial court was familiar with all of the facts and circumstances of this case. There's no gross injustice. There's no abuse or any decision that would fly in the face of the current state of the law. So, clearly, Judge Fahey – I thought this was a summary judgment and we reviewed it. No. Not on the GAL issue. The GAL issue is abuse of discretion. I don't think that the trial court abused its discretion when it denied a GAL. Thank you. Rebuttal. Thank you, Your Honors, and I'll be brief. Mr. Amjad started out by saying that it's not disputed that descendants aren't established at the time of Phoebe's death. That is, in fact, disputed. I mean, that's one of the real reasons that we're here today. Because the descendants are determined at the creation of the trust, which is the date of Phoebe Jones' death. There's a group of people that can be added to or subtracted from that are determinable at the moment of Phoebe Jones' death and continue to be determinable at every single moment of every single day following that. That's different than heirs, which are not determinable at that time. And that goes into Jerry's question about, well, this gift is uncertain because what happens if Jerry has another child? Well, all that means, Your Honors, is that this is a gift that is vested subject to divestment or vested subject to open. Sure, there can be afterborn descendants. My clients can have children. Jerry can adopt a child. The thing is that the second that child comes into being, they're in the group of descendants. The second that adoption certificate is signed, the second that child is born, they are descendants under this trust. And they are people who are in being and ascertainable at that time. Now, Mr. Amjad also made an argument about the uncertainty of the gift. And he says that, you know, this is something that nobody else has looked at. You know, that the trustee can dissipate the assets of his trust, and that means that the gift is uncertain. Well, we don't have oral effect. The trustee can dissipate the assets of the trust. They can't. But what this is, is this is like the grant of a life estate with personal property and a house. And what? With the remainder to children. Say the house burns down. The house burns down, all the personal property is burned down. The fact that that can happen does not render that original gift contingent. It's the same thing here. The trust does not terminate until the death of Mr. Jones. The trust does not terminate when there is a zero balance in the trust account. The trust terminates upon the death of Mr. Jones. There is no statutory provision. There is no provision in the trust that allows for trust termination on any date, except for, at this point, the date of death of Mr. Jones. Well, what about Hudson? Is Mr. Amjad leading us astray on these two points? I think that Mr. Amjad misses on both of those. And I think that he misses on both of those because there, again, is an ascertainable group that is ready to take immediate possession following the termination of the prior estate, which is that's Heisig Prong number two. There's a definite gift. The definite gift is the corpus of the trust. And if that corpus happens to be a cent, if that corpus happens to be a dollar at the end of the day, that's what the corpus is. And that's what then trickles on to the descendants under the granting language of the trust. I think that it's important for this court to distinguish both the Harris case and the Hull case from the case that we're dealing with today. In Harris, the Harris trust granting language contains an explicit requirement of survivorship. In addition to requiring an explicit requirement of survivorship, the grant is also to the heirs, not to the descendants. In Hull v. Adams, the Hull v. Adams is a case that clearly the divide and pay rule applies to. The grant there gives the trustees instructions to sell the farms, divide the proceeds. Well, the thing is that with instructions like that, the descendants can't step in right away and take possession because there's further action required following the termination of the preceding estate. That further action that's required is that the farm must be sold and the proceeds must be divided. If the grant in Hull was giving the farm to the descendants, that would be a different situation. That would not be the application of the divide and pay rule. That would be similar to the situation that we have now. But because there's further action required, that is what makes that a divide and pay case. That is what makes this not a divide and pay case. Now, Jerry brought up a couple of important points, which go to what we're doing here in general. And that's discussing specifically the special needs language of the trust and whether or not this is a trust construction case and whether or not all of us can get our legal fees paid. That's what my clients are fighting against. This is a special needs trust. His client has been receiving payments out of this trust without special needs since the day of the death of his mother. We don't object to those payments. We think that they should be receiving maintenance. However, anything above what should normally be considered maintenance is too much. And we're standing in a position where we're trying to protect that interest, protect the intent of the testator, and prevent that from happening. Thank you, Your Honors, for your time.  The court will be in recess.